IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHN RICHARD CARRITHERS,⁣ )
AIS #256015, )
 )
  Plaintiff, )
 )
  v. )  CASE NO. 2:11-CV-549-WKW
 )    [WO]
 )
KIM TOBIAS THOMAS, et al., )
 )
  Defendants. )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by John Richard Carrithers ("Carrithers") challenging conditions of confinement and actions taken against him at the Easterling Correctional Facility ("Easterling"). The defendants in this cause of action are Kim Thomas, Commissioner of the Alabama Department of Corrections, Gary Hetzel, Louis Boyd and Kenneth Sconyers, wardens at Easterling, and Gwendolyn Babers, Fredrick Grubbs, Larry Peavy, Shawn Logan, and Darrel Gettis, correctional officers at Easterling. Carrithers seeks declaratory relief and monetary damages for the alleged violations of his constitutional rights. *Amended Complaint - Doc. No. 10* at 4.

The defendants filed a special report and supporting evidentiary materials addressing

Carrithers' claims for relief. Pursuant to the orders entered in this case, the court deems it appropriate to treat the special report as a motion for summary judgment. *Order of September 30, 2011 - Doc. No. 27*. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof, and the plaintiff's response, including his affidavits, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party

must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Carrithers is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted."

*Anderson*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's

case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record .... [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243

(11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this

court's disregard of elementary principles of production and proof in a civil case.  The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Carrithers has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

In this civil action, Carrithers challenges the constitutionality of (a) the protection afforded him from verbal requests for sexual favors made by another inmate, (b) the conditions  to which he was subjected while in segregation at Easterling, (c) a haircut he received in June of 2011, and (d) a disciplinary lodged against him for possession of contraband.

### A.  Absolute Immunity

With respect to the alleged constitutional violations Carrithers lodges against the defendants in their official capacities, the defendants are entitled to absolute immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900,  908, 79 L.Ed.2d 67 (1984), or Congress has abrogated

8

the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).   Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity.  Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities for asserted violations of Carrithers' constitutional rights.  *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

## B.  Respondeat Superior

Carrithers names Commissioner Kim Thomas as a defendant in this case.  Carrithers merely asserts that he notified Commissioner Thomas by letter of the alleged matters made the basis of the instant complaint.  The claims against defendant Thomas entitle Carrithers to no relief.

The law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability].... *Robertson v. Sichel,* 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed.

203 (1888) ('A public officer or agent is not responsible for the misfeasances or position

wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or

servants or other persons properly employed by or under him, in the discharge of his

official duties').  Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff

must plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S.Ct.

1937, 1948 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory

officials are not liable under § 1983 for the unconstitutional acts of their subordinates on

the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d

1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior

liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir.2003)

(concluding supervisory officials are not liable on the basis of respondeat superior or

vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher*

*v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a

plaintiff to hold supervisory officials liable for the actions of their subordinates under

either a theory of respondeat superior or vicarious liability.).  "Absent vicarious liability,

each Government official, his or her title notwithstanding, is only liable for his or her own

misconduct."  *Iqbal*, 556 U.S. at 677, 129 S.Ct. 1949.  Thus, liability for actions of

correctional officials at Easterling could attach to defendant Thomas only if he "personally

participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions ... and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Carrithers, however, has presented no evidence and the court cannot envision the existence of any evidence which would create a genuine issue of disputed fact with respect to the claims lodged against Commissioner Thomas.  It is undisputed that Thomas did not personally participate in or have any involvement, direct or otherwise, with the claims made the basis of the complaint.  In light of the foregoing, Thomas can be held liable for actions of correctional officials at Easterling only if his actions bear a causal relationship to the purported violations of Carrithers' constitutional rights.  To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Thomas, Carrithers must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so ..." or "a ... custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Hetzel] directed the [facility's staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted).  A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Carrithers has failed to meet

11

this burden.

The record before the court contains no evidence to support an inference that Thomas directed correctional officials to act unlawfully or knew that they would act unlawfully and failed to stop such action.  In addition, Carrithers has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Thomas failed to take corrective action.  Finally, it is clear that the challenged actions/conditions did not occur pursuant to a policy enacted by Thomas.  Thus, the requisite causal connection does not exist between the actions of correctional officials at Easterling and Commissioner Thomas and liability under the custom or policy standard is not warranted.  Summary judgment is therefore due to be granted in favor of this defendant.

### C.  Eighth Amendment Claims

Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to establish constitutional violations.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain.  *Id*. at 346.  Specifically, it is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Id*. at 348 (citation omitted).  "'[T]he Constitution does not mandate comfortable prisons.'  *Id.* at 349, 101 S.Ct. at 2400.  If prison conditions are merely 'restrictive and even harsh, they are part of

the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399.   Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004).   Although, "the Constitution 'does not mandate comfortable prisons' ... neither does it permit inhumane ones." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal citation omitted); *Rhodes*, 452 U.S. at 345-346 (Conditions may not be "barbarous" nor may they contravene society's "evolving standards of decency.").   Consequently, the conditions under which a prisoner is confined are subject to constitutional scrutiny. *Helling v. McKinney*, 509 U.S. 25 (1993).

A prison official has a duty under the Eight Amendment to "provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer,* 511 U.S. at 832  (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-527 (1984)); *Helling,* 509 U.S. at 31-32.   For liability to attach, the challenged prison condition must be "extreme" and must pose "an unreasonable risk of serious damage to [the inmate's] future health." *Chandler*, 379 F.3d at 1289-1290.   To demonstrate an Eighth Amendment violation regarding conditions of confinement, a prisoner must satisfy both an objective and a subjective inquiry. *Farmer*, 511 U.S. at 834.   In *Farmer*, the Court identified the objective and subjective elements necessary to establish an Eighth

13

Amendment violation.  With respect to the requisite objective elements,  an inmate must first show "an objectively substantial risk of serious harm ... exist[ed].  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh*, 268 F.3d 1028-1029.   As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference....  The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  ...  ***[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment***."  *Farmer*, 511 U.S. at 837-838 (emphasis added); *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety....   It is ***obduracy and wantonness, not inadvertence or error in good faith***, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

14

(emphasis added).

The living conditions within a correctional facility will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] ... [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes*, 452 U.S. at 347. "Conditions ... alone or in combination, may deprive inmates of the minimal civilized measure of life's necessities. Such conditions could be cruel and unusual under the contemporary standard of decency.... But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional." *Id*. at 347. To determine whether conditions of confinement constitute cruel and unusual punishment, the court must look to the effect the condition has upon the inmate. *Id*. at 366. In a case involving conditions of confinement generally or several different conditions, the court should consider whether the claims together amount to conditions which fall below constitutional standards. *Hamm v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). The court's consideration of whether the totality of a plaintiff's claims amount to conditions which fall below applicable constitutional standards is limited by the Supreme Court's admonishment that "*[s]ome* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when

they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need....  To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Wilson v. Seiter*, 501 U.S. 294, 304-305 (1991) (emphasis in original).

A prison official may likewise be held liable under the Eighth Amendment for acting with "'deliberate indifference'" to an inmate's health or safety when the official knows that the inmate faces "a substantial risk of serious harm" and disregards that risk by failing to take reasonable measures to abate it.  *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S.Ct. 1970, 1974 (1994).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a "'sufficiently culpable state of mind.'""  *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991)....  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists - and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  "The known risk of injury must be a strong likelihood, rather than a mere possibility before [the responsible official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533,

16

1537 (11th Cir. 1990) (citations and internal quotations omitted).  As the foregoing makes clear, "[m]erely negligent failure to protect an inmate ... does not justify liability under section 1983...." *Id*.

    1.   <u>Deliberate Indifference to Safety</u>.  Carrithers alleges that the defendants "jeopardized [his] safety" because they failed to protect him from unwanted sexual innuendos made by his cell mate, Terry Benford, during a 3-day period of confinement in disciplinary segregation.  In support of this claim, Carrithers maintains that the defendants had knowledge of the other inmate's requests for sexual favors but failed to immediately separate the inmates and did not provide him access to the Investigative Division of the Alabama Department of Corrections ("I &I").  Carrithers does not dispute that no sexual act transpired as a result of the other inmate's advances.  In addition, although he had access to the Segregation Review Board every Wednesday, Carrithers concedes that he only spoke to the Board on one occasion -- May 25, 2011.  *Plaintiff's Affidavit in Response to the Special Report - Doc. No. 32-1* at 8.  Since Carrithers had not yet been housed with Benford, it is clear that any communication made at this time did not relate to the issues arising from his confinement with Benford.  Carrithers further contends that after speaking with the Segregation Review Board, which included Warden Sconyers, he began "writ[ing] everyone else asking for help...." in obtaining placement in protective custody.  *Id*.  Again, any correspondence submitted to correctional officials by Carrithers prior to June 9, 2011

17

and after June 11, 2011 would have had no bearing on the defendants' alleged failure to protect him from Benford as he was not confined with Benford during these periods of time.

In their affidavits, the defendants adamantly deny they acted with either callous disregard or deliberate indifference to Carrithers' safety with respect to alleged threats from Benford. *Exhibits A-H to the Defendants' Special Report - Doc. No. 26-1 through 26-8.* Specifically, the defendants maintain that during the time Carrithers was in the cell with Benford they had no knowledge of any specific risk of danger to Carrithers nor any reason to believe Carrithers faced a substantial risk of harm from Benford. *Id.* The defendants further maintain and Carrithers acknowledges that upon his request to contact I & I submitted on June 23, 2011 he was provided the address for this entity. *Exhibit A to the Defendants' Special Report - Doc. No. 26-1 at 8.* In addition, officials at Easterling provided Carrithers the contact information for Sgt. Brian Gordon, Coordinator of the Division of Prison Rape Elimination, and Sgt. Gordon conducted an interview of Carrithers regarding his allegations. *Exhibit A to the Defendants' Special Report - Doc. No. 26-1 at 9-10.* During this interview, "Carrithers advised that he did not submit[] to" the sexual advances of inmate Benford but that he was "scared" while in the cell with this inmate. *Id.* Sgt. Gordon recommended that Carrithers receive mental health counseling and requested an I & I investigation. The record further demonstrates that Carrithers was visited by

18

mental health personnel on June 13, 2011 and June 17, 2011 and underwent a mental health evaluation on July 21, 2011 at which time he was diagnosed with heightened anxiety and paranoia. *Id*. at 11.

As previously referenced, correctional officials may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 828 (1994). "It is not, however, every injury suffered by one inmate at the hands of another [or every threat issued by another] that translates into a constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not 'respond[] reasonably to the risk.' *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1982-83, 128 L.Ed.2d 811 (1994). A plaintiff must also show that the constitutional violation caused his injuries." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001) (en banc).

At this juncture, Carrithers is required to produce sufficient evidence demonstrating (1) an objectively substantial risk of serious harm; (2) subjective awareness of this risk on the part of the defendants; (3) the defendants responded to such risk in an objectively unreasonable manner; and (4) the actions/omissions of the defendants caused him to suffer

injuries. *Farmer*, 511 U.S. at 837-838; *Marsh*, 268 F.3d 1028-1029; *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995). "The known risk of injury must be a strong likelihood, rather than a mere possibility before [an official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted); *Rich v. Bruce*, 129 F.3d 336, 339-340 (4th Cir. 1997) (Unless a prison official actually makes the inference that a substantial risk of serious harm exists and then disregards that risk, he does not act with deliberate indifference even though his actions violate prison regulations or can be described as stupid and lazy.). As the foregoing makes clear, mere negligence in providing protection to an inmate "does not justify liability under section 1983...." *Brown*, 894 F.2d at 1537.

The defendants deny they were aware of any facts during the 3-day period made the basis of the claims relating to confinement with Benford from which an inference could be drawn that Carrithers was under a substantial risk of serious harm. In addition, it is undisputed that Carrithers suffered no injuries during the relevant period of time. Thus, the difficulty for Carrithers is that he has submitted no evidence to show the defendants' subjective awareness of a significant risk of harm and does not dispute that he suffered no physical harm while confined with Benford.

The undisputed facts of this case show that any risk of physical harm to Carrithers that existed was only "a mere possibility" which precludes relief with respect to a claim of

20

deliberate indifference.  *Brown*, 894 F.2d at 1537.  Carrithers "has [therefore] failed to establish that [any] Defendant had a subjective awareness of a substantial risk of serious physical threat to Plaintiff[,] ... a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established."  *Carter*, 352 F.3d at 1350.  Finally, the record is devoid of any evidence showing that the defendants drew the necessary inference and thereafter ignored the risk to Carrithers' safety.  Under the circumstances of this case, "to find the Defendants sufficiently culpable would unduly reduce awareness to a more objective standard, rather than the required subjective standard set by the Supreme Court." *Carter*, 352 F.3d at 1350. Consequently, summary judgment is due to be granted in favor of the defendants on the failure to protect claim.

2. <u>Conditions Claims</u>.  The defendants deny that the conditions made the basis of the instant complaint rise to the level of constitutional violations.  Warden Hetzel addresses these claims as follows:

> Plaintiff states he was forced to stay in a cell with bright lights on constantly and that the light in his cell could not be turned off.  Equipment malfunctions may be reported and then will be assigned to maintenance workers who repair any deficiencies....
> Plaintiff claims that he was not given any exercise or recreation. Plaintiff was given several opportunities to exercise and frequently refused those opportunities.

*Exhibit A to the Defendants' Special Report - Doc. No. 26-*1 at 2-3 (citations to attachments

omitted).  In addition, the evidentiary materials submitted by the defendants indicate that routine cell inspections are undertaken by correctional officials and inmates are responsible for "maintain[ing] their cell in a clean and sanitary manner."  *Id*. at 12.  Each of the defendants deny any knowledge of Carrithers' claim regarding the haircut he received on June 16, 2011.

(i)  <u>Bright Cell Lights, No Light Switch in Cells, Lack of Adequate Exercise, 2-Man Cells, Exposure to Heat and Denial of Cleaning Supplies</u>.  Carrithers alleges that while in segregation cell number 7 he was subjected to constant bright lights and the cell did not contain a light switch so that he could turn off the lights.  Carrithers also asserts that during his confinement in segregation he was denied adequate exercise, subjected to confinement in a 2-man cell, exposed to heat and denied cleaning supplies.

The Constitution does not mandate that prisons be comfortable, *Rhodes*, 452 U.S. at 349, and "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment."  *Chandler*, 379 F.3d at 1296; *Alfred v. Bryant*, 378 Fed.Appx. 977, 980 (11th Cir. 2010) ("'Inmates cannot expect the amenities, conveniences and services of a good hotel.'" (quoting *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988)).  Carrithers does not establish that the conditions about which he complains denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain.  *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347.  It is likewise clear that these conditions do not present severe or extreme conditions that posed an

unreasonable risk of serious harm to Carrithers' health or safety.  Furthermore, Carrithers fails to demonstrate deliberate indifference or reckless disregard by the named defendants with respect to his health or safety regarding these issues.  Specifically, Carrithers does not identify any particular condition of which any of the defendants were aware from which an inference could be drawn that a substantial risk of serious harm existed.  The record is also devoid of evidence showing that any of the defendants drew the requisite inference.  Consequently, summary judgment is due to be granted in favor of the defendants on the aforementioned conditions claims.  *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

(ii) <u>Shaving of Head</u>.  Carrithers alleges that on June 16, 2011 defendant Gettis ordered the barber to "shave my head" and this constituted cruel and unusual punishment in violation of the Eighth Amendment.  *Amended Complaint - Doc. No. 10* at 3.  Carrithers further asserts that shaving his head put him "at risk of infection and disease [as] clippers are not cleaned from one person to the next."  *Id*.  Carrithers acknowledges that despite access to the Segregation Review Board he did not address this haircut with the Board.

Defendant Gettis denies any knowledge of this incident.  The remaining defendants adamantly deny that they ordered or required the barber to shave Carrithers' head.  Instead, the defendants assert that inmates are not required to shave their heads but must only

maintain their hair in accordance with the inmate grooming policy.[2]  It is likewise clear, however, that an inmate may choose to shave his head or maintain a haircut shorter than that required by the grooming policy.  In fact, the evidentiary materials submitted by the defendants demonstrate that prior to this particular haircut Carrithers opted to keep his hair closely shaven to his head.  *Exhibit A to the Defendants' Special Report - Doc. No. 26-1* at 4.  Finally, it is well settled that inmate barbers are instructed to sanitize their barber tools utilizing appropriate sterilization procedures and materials before each and every use.

Carrithers has failed to establish that the haircut he received in June of 2011 or the manner in which barbers sanitized their clippers denied him the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 347.  Moreover, these allegations do not rise to the level of a severe or extreme condition which posed an unreasonable risk of serious harm to Carrithers' health or safety.  *See Chandler*, 379 F.3d at 1289 (holding that a prisoner must prove that the prison condition he complains of is sufficiently serious and "extreme" to violate the Eighth Amendment).  Consequently, the court concludes that the actions associated with the challenged haircut did not constitute cruel and unusual

---

[2]The record makes clear that Easterling enforces a standard operating procedure for grooming which requires that "[i]nmates ... keep their hair clean and neatly trimmed. Their hair cannot extend over their ears or shirt collar. Their hair cannot be packed or plaited, and fades are not allowed. Their sideburns cannot extend beyond the middle of their ear; and designer, pencil-thin, pencil-drawn, or thinned sideburns are not allowed." *Truss v. Thomas, et al.*, 2:09-CV-984-MHT-WC, 2012 WL 4478775, 3 (M.D.Ala. 2012).

punishment in violation of the Eighth Amendment.

To the extent these allegations can be construed to assert a claim of deliberate indifference to the plaintiff's health or safety arising under the Eighth Amendment, the court concludes that this claim likewise entitles Carrithers to no relief.  Carrithers presents no evidence that the defendants had knowledge of specific facts regarding the haircut from which an inference could be drawn that a substantial risk of serious harm existed.  *Carter*, 352 F.3d at 1350 ("Plaintiff has failed to establish that the Defendant[s] had a subjective awareness of a substantial risk of serious physical [harm] to Plaintiff; thus, Plaintiff has failed to establish a required element of this claim.  When viewing the evidence most favorably toward Plaintiff, a claim for deliberate indifference has not been established....").  Moreover, the record is devoid of any evidence showing that the defendants drew the necessary inference and thereafter ignored the risk.  Carrithers has therefore failed to establish each of the requisite elements of deliberate indifference.  Thus, summary judgment is due to be granted in favor of the defendants.

(iii)  Totality of Conditions.  The court has undertaken a thorough and exhaustive review of the claims presented by Carrithers and the response to these claims by the defendants.  After such review, the court finds that the challenged conditions though uncomfortable, inconvenient, unpleasant and/or objectionable were not so extreme as to violate the Eighth Amendment. *Chandler v. Baird*, 926 F.2d at 1289 (11th Cir. 1991).

Specifically, the totality of the claims before this court do not amount to conditions which fall below applicable constitutional standards as Carrithers failed to demonstrate that the challenged conditions had "a mutually enforcing effect that produce[d] the deprivation of a single, identifiable human need...." *Wilson*, 501 U.S. at 304. "To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes." *Id*. While the allegations made by Carrithers are somewhat troubling, the evidence regarding the conditions at Easterling fails to identify with requisite specificity the precise nature of the conditions and their impact on Carrithers' heath or safety.

Furthermore, even had Carrithers demonstrated "an excessive risk to [his] health or safety," correctional officials cannot be held liable "solely because of the presence of objectively inhumane prison conditions." *Farmer*, 511 U.S. at 838. Carrithers has presented no specific facts nor produced any evidence indicating that the defendants subjectively knew of a substantial risk of harm and disregarded this risk so as to establish a violation of the Eighth Amendment. *Id*.; *Carter*, 352 F.3d at 1349. Consequently, summary judgment is due to be granted in favor of the defendants on these claims. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *see also Carter*, 352 F.3d at 1349-1350.

### D.  The Disciplinary Action

To the extent the complaint can be construed to challenge the due process afforded for a disciplinary imposed upon Carrithers for possession of contraband in May of 2011, this claim entitles Carrithers to no relief.

On May 22, 2011, Officer Reginald Kincey entered Carrithers' cell to conduct a shakedown of this inmate's property.  During this search, Kincey observed Carrithers throw a pill, subsequently identified as Trazodone, on the floor.  Correctional officials determined that Carrithers did not have a prescription for Trazodone and, therefore, was not authorized to have this medication in his possession.  Based on the foregoing, Carrithers received notice of investigative detention and was placed in segregation.  Carrithers was also charged with a violation of Rule #64, possession of contraband.  *Exhibit D to the Defendants' Special Report - Doc. No. 26-4* at 3.  Officer Gettis timely served Carrithers with notice of the disciplinary charge and the scheduled date for the disciplinary hearing related to this charge.  *Id.*  Carrithers signed for receipt of the disciplinary and advised that he did not wish to call any witnesses.  Upon completion of the noticed disciplinary hearing, during which Carrithers had an opportunity to present evidence, provide testimony and question the arresting officer, the hearing officer, Kayla Albritton, found Carrithers guilty of the charged offense.  *Id.* at 4.  The sanctions approved for this disciplinary infraction consisted of the loss of all privileges and placement in segregation for thirty days.  *Id.*

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required.  "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital).  The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'  *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,* 724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests).  In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.  *Sandin*, 515 U.S. at 485-486 (disciplinary

confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano*, 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the deprivations imposed upon Carrithers based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id.* This court must therefore determine whether the actions about which Carrithers complains involve the deprivation of a state-created liberty

interest as defined by the standard set forth in *Sandin*.

As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior.  *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation."  *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293.  In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293.  For these reasons, we abrogated the methodology of parsing the language of particular regulations.
>
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause.  The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.*  Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).
>
> After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life."  *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of

privileges and short-term confinement in segregation "though concededly punitive, do[]

not represent a dramatic departure from the basic conditions" of the sentence imposed upon

the plaintiff. *Id*. at 485.  In light of the foregoing, it is clear that the aforementioned

sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life." *Id.* at 484.  Thus, Carrithers' due process claim fails

under the law as established in *Sandin*.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before February 23, 2015 the parties may file objections to

this Recommendation.  Any objections filed must clearly identify the findings in the

Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive

or general objections will not be considered by the District Court.  The parties are advised

that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 5th day of February, 2015.


/s/     Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE